Good morning, Honorable Panel Members. Bruce Lickety appearing on behalf of Petitioner Nusai Vixaysack. This is the petition of a Laotian soldier who deserted and ultimately fled to the United States in 1990 after he came under suspicion for traitorous connections to the West. But I'd first like to spend just a couple of minutes addressing the noncompliance with regulation by the Board of Immigration Appeals in this case, and specifically in the decision by a single board member, which I think is being repeated by the board. And I'd like to urge this panel to not simply gloss over that, even though it's perhaps perceived as a technical point. There might be a tendency on the part of reviewers, some reviewers, to say, what difference does it make if the board dismisses an appeal, a single member of the board dismisses an appeal, or affirms it, since the regulation obviously confers the authority on the board to, and also a single member of the board, to do the latter, in other words, to affirm the opinion of the immigration judge. That appears to be the government's position. However, my point remains that that very question of what difference does it make is improper and irrelevant, indeed illegitimate. Error in applying a federal regulation is tested by whether the language of the regulation confers authority on the agency or whether it doesn't. If the regulation doesn't allow a single member of the board to dismiss, other than by a very carefully specified enumerated types of summary dismissal, then it is simply reversible error for a single board member to dismiss an appeal on other grounds, regardless of how much that dismissal might resemble an affirmance of the immigration judge's decision. The act of dismissal and the language of dismissal, in such a case where the merits have obviously been looked at, is simply not permitted by the regulations and is therefore ultra-virus, and that is the end of the inquiry. So that alone is grounds for reversal. If one were to engage in further speculation about why the board might be opting to dismiss rather than affirm, or why they did so in this case, then it might be possible to identify some of these what difference does it make factors. However, I submit, I respectfully submit, that that is not the burden of the appellant. The burden is rather on the agency as a creature of regulation, and only a creature of regulation, simply to adhere to that regulation, and the board did not do so in this case with respect to HCFR 1003.1 and all of its relevant parts. I'm not going to re-argue all the other authorities in the brief, and specifically I'm not going to touch on the convention against torture argument here today, although I think that remains a strong argument regardless of what the panel would decide on the asylum claim. In fact, instead, I want to spend the rest of my time, except for a couple minutes here, trying to anticipate several possible objections that a reviewer might have to granting Mr. Isese asylum, even if he appeared to be eligible for asylum based on a well-founded fear of future persecution, which is the claim. I intend that the facts in the argument show that he is eligible, but that there are certain elements of his profile that may seem to be stumbling blocks here. One might be the number of critical facts that are derived only from his testimony, and that certainly is the case here, although not exclusively, as we pointed out in the brief. I would simply respectfully remind the panel that not only has this Court said that asylum may be granted based on nothing more than this type of evidence, but also, in this case, the circumstances in their totality make it clear why there would not be much corroborating evidence, why there would not be much third-party or documentary evidence to support some of those claims. Obviously, there are human rights reports as well, which we have pointed out were overlooked to a large extent. The Board did find the applicant credible, and it doesn't matter for the reviewer's purposes that it did not find his inferences credible, whatever that means. That was another statement made by the Board. Secondly, one might object that if Mr. Vizsasek is in danger of persecution upon return to Laos, it is because he has placed himself in that position. And here I refer specifically to arguments that might be founded in the fact that he has now been in the United States for 21 years with his alleged enemy-collaborator relatives, and that this itself is likely to be taken as evidence by the Laotian authorities if he were forcibly returned of the very spy status that he feared when he left. In other words, by his own act, he is now that much more likely to be regarded as an American spy or traitor to his country. Indeed, he has publicly accused the Laotian government in this proceeding, in the underlying proceeding of abusive conduct, and he has made disclosures for the first time in this case about his connections to his brother-in-law, who was a CIA collaborator during the Vietnam War, which necessarily have put him in additional danger were those facts ever to be leaked out and made known to the Laotian government. So there might be resistance to the notion that those facts, whether taken alone or in association with others, should qualify him for asylum. Here again, however, I would respectfully submit that even though there might be that natural reluctance to award asylum based primarily on developments or a fear that has really occurred during or as a result of the asylum process itself, there are no sound legal reasons or presidential reasons to decline asylum on that basis. And I do think this argument also relates to the point that I made in the brief that past persecution is not required. The government seemed to be focused on past persecution. We are not arguing past persecution. We're arguing well-founded fear of future persecution. And I think it's... With where the burden rests, or does it not? I'm sorry. I didn't hear you, Your Honor. Where is the burden when there has been no past persecution? Is it not on your client? Yes, Your Honor. I believe that it could fairly be stated to be in my client, although I believe in this case that my client has met that, that the petitioner met that, and that the immigration judge and the board simply overlooked some of the evidence and made unreasonable inferences from some of the evidence that didn't correctly apply the law. So there is no indication in this case, in any event, that Mr. Vice V. Sasek set out to contrive or create the circumstances that lead to his fear of future persecution. They were simply a natural outgrowth of that fear. And the same can really be said of his desertion from the military to begin with, and therefore the source or the nature of his claim shouldn't be held against him. Just a word then about the fear of potentially opening the floodgates to persons who desert the military forces of their country, which I think the Ninth Circuit has expressed inferentially at least, granted that it is well established that prosecution for desertion alone does not constitute persecution. This Court has recognized that where the consequences of desertion are much more severe than prosecution in jail time alone, then a well-founded fear of persecution may be established. Our claim has always been based on the fact that in Laos someone of Mr. V. Sasek's profile is likely to be singled out for harsh treatment, torture indeed, in the prisons of Laos, and that's what Mr. V. Sasek can expect. And this concern would not be likely to be duplicated by many others for reasons that I'm not going to have time to get into right now if I want to reserve some time, so thank you. HANNAH FARBER May it please the Court, my name is Hannah Farber on behalf of the Attorney General. The Petitioner has failed to show that record evidence compels reversal of the statute, and he did not meet his burden of proof for asylum withholding, removal or cap protection. I'll take just a quick moment to address the argument regarding the regulations and the Board's decision. 8 CFR 1003.1d1i states that Board members shall exercise their independent judgment and discretion in considering and determining the cases coming before the Board, and they may take any action consistent with their authorities under the Act and the regulations as appropriate. And the Board's make the regulations make clear that Board members may affirm decisions and do so by stating that they've dismissed a decision, where they must state a decision in a particular way, the regulations spell that out. So, for example, with an affirmance without opinion, the Board must state it in a particular manner. Otherwise, the Board may affirm a decision and may do so by stating that they've dismissed the case. Well, his whole point seems to be that the Board didn't use the word affirm. It used the word dismiss. Right. And my answer to that is that the regulations are quite specific about where a Board member must specifically state his decision in such a way. So where a Board affirms without opinion, the Board must affirm or state that they are affirming without opinion. But in instances where the Board is affirming, there is no indication in the regulation that the Board must state specifically or explicitly that it is affirming. Well, the regulation says the Board members shall issue a brief order affirming, modifying, or remanding the decision under review. And that's exactly right. And this decision doesn't affirm or modify or remand. It dismisses. So that's his argument, isn't it? Well, I disagree with his argument, because my view of the Board's decision is that the Board did, in fact, affirm the decision. It just didn't explicitly state that it was affirming it. And the regulations don't require it to do so in this case. It had the same effect.  But moving forward to the next point. In fact, isn't it true in all the decisions that the Board renders, whether it's a one-member, a three-member, if they agree with the I.J., it's always a dismissal? I've never seen anything else. It seems to be like their customary usage. I'm glad that you mentioned that, because, in fact, it is routine language in any Board decision to say that it is dismissing the case when the effect of the decision is to affirm the immigration judge's decision. So I would be surprised if that were a problem. Well, maybe we ought to question all the Board's decisions. I think probably we should look at the merits of the case. As Petitioner's counsel stated, he acknowledges that Petitioner did not argue past persecution. So I'll move directly to the next point. Well, since we have such little time for these cases, let me go directly to what bothers me. The Board found that the Respondent has not shown that anyone in his family held high status in the pre-1975 government, although someone in his family worked for the CIA. That's right. The Board quoted half the sentence and omitted the other half when they were quoting from the country condition reports. It said that we also note that a Laos citizen generally can return to Laos without fear of distribution unless his activities or those of his family might cause the government to charge the individual with crimes against the state. This would involve holding high status in the pre-1975 government. It omitted the rest, which said this would involve the holding of high status in the pre-1975 government or participation at that time in activities looked upon with particular disfavor by the present regime, such as close association with Vang Pao, a Hmong leader who worked with American officials during the war in Vietnam. Now, if you read that half, you'd think that someone who worked directly with American officials would be even more in danger than someone who worked with a leader who worked with American officials. But whatever you would – however you would interpret that half of the sentence, why would the Board leave out half of the sentence? I'm not sure that either side of the sentence is more opposite to the Petitioner's case. And the reason for that is that Petitioner didn't show that the Laotian government could have left out the entire sentence. Well, then they could have left out the entire sentence, but the Board used that to explain its decision as to why substantial evidence didn't support – did not support the denial of relief. And they then applied the standard, which you say, I guess, was that the whole standard is irrelevant, but the Board didn't seem to think so. The Board thought the standard was relevant to its decision, but it only – but it omitted half of the sentence, which to me, just reading it, seems to me to be more relevant. So I'm sorry, just to clarify, you're saying that the Board recognized that individuals returning to Laos with connections to the pre-1975 government have been found not to be mistreated, but that individuals – what was the second half of the sentence? Well, the sentence was a citizen can return to Laos without fear of retribution unless his activities or those of his family might cause the government to charge the individual with crimes against the State. This would involve holding high status in the pre-1975 government. Well, obviously, he didn't hold high status. Oh, I see what you're saying. And so he said he didn't meet that standard. But it didn't talk about whether he met the next half of the sentence. Right. And the reason I think that that's not – the Board found that Petitioner failed to demonstrate that the government suspected him of anti-government activity based on his family connections. And the reason for that is that Petitioner claimed that the government was aware of his connection to his father, his father's pre-1975 activities, and was aware that he was receiving money from his sister-in-law in the United States who was married to someone who had participated in CIA activities, but they never approached him about it. They never stated that they viewed him as being disloyal as a result. He makes generalized allegations about comments made in group settings, but they never mistreated him based on his family background or viewed him as disloyal as a result, or at least he didn't present evidence that convinced the Board of that. There's a statement that he was suspected of being a spy and a traitor. Now, well, the statement – Is that an accurate reflection of – No. In fact, that's an overstatement. He did not present any evidence that any of his military superiors ever approached him or accused him of being a spy or disloyal. He was receiving money from his sister who lived in the United States, and there is some indication that his colleagues were aware that he was receiving money, and apparently one of his colleagues said, well, this must mean that you're in contact with the traitor. But as far as military superiors, there were comments made in group contacts about the need to be loyal and that if one was disloyal, then one might not receive a promotion. Now, a promotion is very different from persecution. If anything, this would be discrimination. But he hasn't shown any specific evidence that – Well, but discrimination for being a spy or an agent of the United States or something like that is different from ordinary discrimination. It ties into – and I'm not suggesting that this is what happened here, but if you're suspected of being a spy, that might well provide some basis for asylum, whether anything happened then or not. It's also a question I wanted to ask you. We look at current country conditions, and if they've changed favorably, then we don't let somebody allege fear of future persecution. If they've changed unfavorably, I assume it's the same, whether they've changed in the country or to the person. Here, the person has engaged in a close association with his family, with his brother-in-law, who was a CIA agent. I think the important point here is that Petitioner did not provide any evidence showing that his military superiors viewed him individually as a spy. I'm not talking about his military superiors. I'm talking about the point that counsel raised, that he's lived for 20 years or so with his brother-in-law, who was a former CIA agent, and whether that would affect his return to Laos. And that might be very well raised by the second half of the sentence. I take your point. I take his point. I think that as with the rest of his claim, the statement is simply too attenuated. He hasn't shown that after 20 years' time, he would return to Laos, and anyone there would even know who he is, or that they would be able to identify that, in fact, he's had contact with his brother here in the United States. He has to show some evidence beyond a speculative assertion that he would be singled out for disproportionate treatment, and it's the government's view that he hasn't done so. I see that my time is out. I'm happy to continue answering questions. In sum, it's the government's view that Petitioner has not shown evidence that record evidence compels reversal of the agency's decision, and the Court should deny the petition for review. Thank you. There has, in fact, been uncontroverted testimony about exactly what the panel has been questioning the government about, so that even if no military superior had approached him, which I think goes more to the issue of past persecution, I think that the panel is on the right, exactly on the right track in looking at the effect right now on these associations if he would go back. And the reality is that he did show not only that someone was looking at his mail while he was in the military and questioning about it, but he also showed that authorities approached his family after he deserted the military. So he obviously was on a list somewhere, and it would be presumptuous to assume. Why wouldn't they assume that he was on the list for desertion? I mean, if they went to see his family after he deserted, wouldn't it be reasonable to presume that they were looking into his desertion? Correct, Your Honor, although it could well be that they were looking for other things as well if they put two and two together with the sister and the brother-in-law's address in the United States and looked into that a bit more. But the main point I want to make is that he did come to the attention of the authorities, and I think it would be presumptuous to conclude that even now, in the nature, because of the totalitarian nature of the regime of Laos, it would be presumptuous to think that somehow he has escaped detention, regardless of the fact that he may have... Well, it's presumptuous either way, isn't it? Just because he came to the attention of the authorities doesn't compel the conclusion that he was on there because of his association with his brother-in-law. I would probably be forced to agree with you, Your Honor. I think the conclusion isn't compelled, but I think that based on the totality of the circumstances, including all the human rights from the State Department and Amnesty International reports about the nature of the regime in Laos, that it would be more likely than not, based on our common experience, that he has not escaped their attention. And I guess the only other point I would like to make, if I can, repeated error in the application of a regulation, which is what I understand the panel to be saying and the government to be conceding that the Board has done, does not make the error correct. And I would urge the Court to make sure that the Board acts correctly in the future. I don't believe it affects any past cases if the Court insists on adherence with the regulation. So with that, Your Honor, I will submit and request the petition be granted. Thank you, counsel. Case disargued will be submitted.
judges: Fletcher, Reinhardt, Tashima